**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **EMILY LEWIS** <br> 11551 Reagan Drive <br> Fishers, IN 46038, <br><br> **Plaintiff,** <br><br><br> **v.** <br><br> **WILBERFORCE UNIVERSITY** <br> Serve Statutory Agent: <br> Acme Agent, Inc. <br> 41 South High Street, Suite 2800 <br> Columbus, OH 43215 <br><br> **Defendant.** | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Case No. 3:24 -cv-64 <br><br> Judge: <br><br><br><br><br><br><br> **Jury Demand Endorsed Hereon** |

## COMPLAINT

NOW COMES Plaintiff Emily Lewis ("Plaintiff") and proffers this Complaint for damages against Defendant Wilberforce University ("Defendant").

## THE PARTIES

1. Plaintiff Emily Lewis is a natural person residing in Hamilton County, Indiana.

2. Defendant Wilberforce University is a domestic nonprofit corporation located at 1055 N. Bickett Rd., Wilberforce, OH 45384, which is located in the Southern District of Ohio.

3. Plaintiff is an "eligible employee" as that term is defined in the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(2).

4. At all times relevant herein, Plaintiff was an "employee" of Defendant as that term is defined under the FMLA.

5. At all times relevant herein, Defendant was a covered "employer" as that term is defined under the FMLA.

## FACTUAL BACKGROUND

6. Plaintiff began working for Defendant in or around October 2020 as its Director of Educational Technology and Faculty Development.

7. Plaintiff began working as the Assistant VP of Academic Affairs in or around August 1, 2021.

8. Plaintiff also took on the role and responsibilities of the Interim Dean for Arts & Sciences, in addition to the Assistant VP of Academic Affairs duties, until October 2022.

9. In or around May 2022, Defendant offered Plaintiff the position of Interim VP of Academic Affairs.

10. On July 22, 2022, Plaintiff received written communication for the removal of the title "Interim".

11. On December 8, 2022, Defendant sent Plaintiff the offer letter stating that it was "pleased to remove the title of interim and offer you the position of Vice President of academic Affairs and Strategic Initiatives, effective August 1, 2022," which it stated is a "full-time, 12-month position." The letter went on to specify "at the end of your tenure as Vice President of Academic Affairs and Strategic Initiatives, you will be reassigned as a Professor of Organizational Management in the Center for Leadership in Management and Business (CLIMB) Program."

12. By May 2023, Defendant's new President, Dr. Newkirk, who replaced the former President, had started working for Defendant.

13. In or around June and July 2023, Plaintiff began winding down her VP of Academic Affairs position and began submitting plans for the courses she was scheduled to start teaching in the fall of 2023.

14. At all relevant times herein, Defendant's terms of employment typically ran through the end of June, with each new 12-month term beginning July 1st.

15. At all relevant times herein, if an employee was not going to be renewed for the following 12-month term, the University's decision is made and conveyed to the candidate prior to July 1st.

16. Plaintiff continued getting paid through July 2023 after her role as a VP of Academic Affairs had ended and her professor role began.

17. Towards the end of June 2023, Plaintiff requested medical leave due to having dangerously high blood pressure and anxiety.

18. At the beginning of July 2023, Plaintiff required hospitalization threatening a heart attack and/or stroke due to having dangerously high blood pressure.

19. Defendant completed Section I of the FMLA certification form for Plaintiff to provide to her medical provider stating that her job title was "VP of Academic Affairs / Professor."

20. Plaintiff's medical provider submitted the FMLA certification paperwork required by the University.

21. Plaintiff's FMLA certification form requested continuous leave from July 28, 2023 through August 24, 2023 and intermittent leave thereafter through August 2024.

22. Plaintiff took medical leave from July 28, 2023 through August 24, 2023.

23. When Plaintiff returned to work with Defendant on August 28, 2023, Defendant told her that they thought she was not able to return until August 2024, and as such, they had already hired other adjuncts to teach her courses.

24. The courses Plaintiff was scheduled to teach were not to start until September 2023.

25. Defendant incorrectly read the FMLA certification form to state that Plaintiff could not return to work until August 2024.

26. At no time during Plaintiff's meeting with Defendant on August 28, 2023 did Defendant mention Plaintiff lacking qualifications to teach the courses she was scheduled to begin teaching.

27. Within hours after Plaintiff's meeting with Defendant on August 28, 2023, Defendant e-mailed Plaintiff a letter stating that that "it has been determined that you are not properly trained or credentialed to teach courses in our Organizational Management degree program" because she did not have an MBA or DBA, but rather, an Ed.D and an M.S., and that the University did "not have any academic programs for which you are qualified to teach."

28. Defendant had possessed Plaintiff's curriculum vitae, which stated her earned degrees, since she began working for Defendant.

## FIRST CAUSE OF ACTION
**Interference – Violation of the Family and Medical Leave Act**

29. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

30. Plaintiff was an eligible employee to take FMLA when she needed to take off for her "serious health condition," because she worked more than one thousand two hundred fifty hours (1,250) for Defendant prior to that date and Defendant employed Plaintiff for more than twelve (12) months prior to that date.

31. Plaintiff's anxiety and high blood pressure constituted "serious health conditions" under the FMLA because, among other reasons, they required inpatient care, constituted a permanent or

long term condition, and required Plaintiff to receive treatments at least twice a year, have continued over extended periods of time, and cause her episodic periods of incapacity.

32. Plaintiff's "serious health conditions" are qualifying events for leave under the FMLA, entitling Plaintiff to twelve (12) weeks of job-protected leave.

33. Plaintiff put Defendant on notice that she needed FMLA leave for her serious health condition by, at a minimum, applying for FMLA leave.

34. Defendant knew that Plaintiff's serious health condition qualified for FMLA leave because Defendant approved it.

35. Plaintiff put Defendant on notice that she needed FMLA leave in or around the end of June 2023 by, at a minimum, notifying the Director of Risk & Benefit Management that she needed time off due to dangerously high blood pressure and anxiety.

36. Defendant interfered with Plaintiff's FMLA rights because it did not return her to her same position that Plaintiff held when the FMLA leave commenced or to an equivalent position with equivalent benefits, pay and other terms and conditions of employment.

37. Defendant lacked good faith and/or reasonable grounds to believe they had not violated the FMLA in its discharge of Plaintiff.

38. Defendant's violations of the FMLA entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### Retaliation - Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(2)

39. All of the preceding paragraphs are realleged as if fully rewritten herein.

40. Defendant knew or should have known that Plaintiff's serious health condition qualified for FMLA leave and, among other things, required intermittent leave through August 2024.

41. Defendant retaliated against Plaintiff for requesting FMLA by, among other things, terminating her days immediately upon her return from continuous FMLA leave but before her intermittent leave was to begin.

42. Defendant lacked good faith and/or reasonable grounds to believe they had not violated the FMLA in its discharge of Plaintiff.

43. Defendant's stated reason for termination is a pretext for retaliation.

44. Defendant's violations of the FMLA entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests, monetary damages including economic damages, back pay and benefits, expert witness fees and attorneys' fees and costs, and front pay, and liquidated damages in an amount to be determined at trial, which the Court deems just and appropriate.

Respectfully submitted,

/s/ Bradley L. Gibson
Bradley L. Gibson, Trial Attorney (0085196)
Angela J. Gibson (0080928)
**GIBSON LAW, LLC**
9200 Montgomery Road, Suite 11A
Cincinnati, OH  45242
brad@gibsonemploymentlaw.com
513.834.8254 [T]
513.834.8253 [F]

Counsel for Plaintiff

**JURY DEMAND**

Plaintiff demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)